IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| LUZ I. CARABALLO CORDERO, et al. * <br> * <br> Plaintiffs * <br> * <br> v. * <br> * <br> BANCO FINANCIERO DE PUERTO * <br> RICO, et al. * <br> * <br> Defendants * <br> ******************************** | Civil No. 98-1837(SEC) |

**OPINION AND ORDER**

Before the Court is Plaintiffs' motion requesting enforcement of a settlement agreement that they understand was reached with Defendants Banco Financiero de Puerto Rico and the Commonwealth of Puerto Rico (**Docket # 93**). After reviewing Plaintiffs' motion, the documentary evidence accompanying it, and Defendant's opposition (**Docket # 96**), the Court will **GRANT** Plaintiffs' motion and enter Judgment in their favor.

**Factual and Procedural Background**

The above-captioned case has been pending before this Court since July 20, 1998. Recently, however, the Court has held two settlement conferences with counsel for all parties present. See **Docket ## 80 and 87**. During those conferences, the Court suggested that the case be settled by having Banco Financiero cancel Plaintiffs' debt to the bank of approximately $223,000.00 (which appears to be unrecoverable at this time), and by having the Commonwealth and the bank combine to give a nominal amount of around $15,000.00 to Plaintiffs in consideration of their children's state law claims. Such a settlement would have disposed of the whole case, including all the Plaintiffs' federal and state law claims.

Thereafter, on March 14, 2002, Plaintiffs filed a motion informing the Court that they had reached a settlement agreement with Defendants (**Docket # 89**). The Court granted the parties until March 29, 2002 to file said agreement (**Docket # 90**). On April 4, 2002, Plaintiffs filed another informative motion requesting that the Court grant them an extension




of time to file the stipulation because Banco Financiero's counsel had informed them that they needed a little more time to take care of the required paperwork (**Docket # 91**). The Court granted the parties until April 19, 2002 (**Docket # 92**). The parties failed to file the stipulation and instead, on May 1, 2002, Plaintiffs filed the motion requesting enforcement of the settlement agreement which is the subject of this Opinion and Order.

Plaintiffs claim that a binding settlement agreement was reached by the parties through a series of letters. They have produced a letter dated February 19, 2002 from Banco Financiero's counsel to Plaintiffs' counsel in which the bank offered to raise its initial counter-offer to extinguish the full amount of Plaintiffs' debt, with an additional payment of $5,000.00, partly in consideration of the pending state claims of the minor children who witnessed the arrest. **Docket # 93, Exhibit A.** Furthermore, the letter stated that the Commonwealth appeared to be willing to contribute some other small amount so that the case might be settled. In fact, Plaintiffs have also filed a copy of a letter dated February 22, 2002 from the Department of Justice in which the Commonwealth offered to contribute another $6,000.00 so that the case could be disposed of. **Docket # 93, Exhibit B.**

Having received said offers, Plaintiffs' counsel sent a letter dated March 14, 2002 to both Banco Financiero's and the Commonwealth's counsel, in which they accepted the settlement offer as described in the two letters described above. **Docket # 89, Exhibit C.** Plaintiffs' counsel further requested Defendants' counsel to draft the corresponding settlement agreement.[1] After the Court issued an Order setting a deadline for the filing of the stipulation, Defendants' counsel requested more time to finish up the paperwork, as described above, Then, through a letter dated April 10, 2002, Defendant Banco Financiero rescinded its part of the offer relative to the $5,000.00 payment claiming that it had been misled by Plaintiffs to think that the extra money was in consideration for dismissal of the

---

[1] It should be noted at this point that there is no genuine issue of fact as to the authenticity or content of these letters, since neither party has made any such allegations.

children's pending **federal claims**, when in fact those claims had already been dismissed by the Court. **Docket # 89, Exhibit D**.

After receiving this letter, Plaintiffs filed their motion for enforcement of the settlement agreement. In their opposition to said motion, Defendant makes two basic arguments. First, it claims that no binding agreement was reached because Plaintiffs' acceptance was ineffective since an unreasonable amount of time lapsed between their receipt of the offer and their letter of acceptance. In the alternative, Defendant argues that it was misled by Plaintiffs as to the children's claims, and that, therefore, the contract is voidable due to mistake.

**Applicable Law and Analysis**

We should begin by stating that a party to a settlement agreement may seek to enforce the agreement's terms when the other party reneges. When the settlement collapses before the original suit is dismissed, "the party who seeks to keep the settlement intact may file a motion for enforcement. See United States v. Hardage, 982 F.2d 1491, 1496 (10th Cir. 1993) (**'A trial court has the power to summarily enforce a settlement agreement entered into by the litigants while the litigation is pending before it.'**) (citations omitted); Mathewson Corp. v. Allied Marine Indus., Inc., 827 F.2d 850, 852-53 (1st Cir. 1987) (similar)." Malave v. Carney Hospital, 170 F.3d 217, 220 (1st Cir. 1999) (emphasis added). As the First Circuit has coherently explained, there exists a strong policy favoring the settlement of lawsuits by the courts, when at all possible:

> We start by lauding the prudential policy favoring settlement as a preferred alternative to costly, time-consuming litigation. As any litigator or judge can attest, the best case is a settled case. We have characterized a settlement negotiated, as here, "under the eyes of the court [as] a most solemn undertaking...." Warner v. Rossignol, 513 F.2d 678, 682 (1st Cir. 1975). **Without doubt, a district court possesses the authority to insure due compliance with such a pact.** See Dankese v. Defense Logistics Agency, 693 F.2d 13, 16 (1st Cir. 1982) (district court "retains an inherent power to supervise and enforce settlement agreements entered into by parties"); Crown Life Insurance Co. v. Springpark Associates, 623 F.2d 1377, 1380 (9th Cir.), cert. denied, 449 U.S. 956, 101 S. Ct. 364, 66 L. Ed. 2d 221 (1980) (similar); Meetings & Expositions, Inc. v. Tandy Corp., 490 F.2d 714, 717 (2d Cir.

> 1974) (per curiam) (similar). We agree generally with the Fifth Circuit that, "[w]here the parties, acting in good faith, settle a controversy, the courts will enforce the compromise without regard to what the result might have been had the parties chosen to litigate." Terrain Enterprises, Inc. v. Western Casualty and Surety Co., 774 F.2d 1320, 1321 (5th Cir. 1985), cert. denied, __ U.S. __, 106 S. Ct. 1639, 90 L. Ed. 2d 184 (1986). Thus, the district court had ample authority to discern whether or not a valid and binding settlement had been reached, and if so, to enforce it.

Mathewson Corp. v. Allied Marine Indus., Inc., 827 F.2d 850, 852-53 (1st Cir. 1987) (emphasis added).

Although disputes regarding settlement agreements are generally resolved according to state contract law, see Data Gen. Corp. v. Grumman Sys. Support Corp., 36 F.3d 1147, 1166 (1st Cir.1994), the First Circuit Court of Appeals has held that in the case of an oral agreement purported to settle a claim **brought pursuant to a federal statute and based on a stipulation placed on the record in federal court**, federal interests are may be sufficient to make federal law the guidepost by which a court should decide whether the parties have entered into an enforceable settlement of that claim. Negrón Gaztambide v. Hernández Torres, 145 F.3d 410 (1st Cir. 1998) citing Town of Newton v. Rumery, 480 U.S. 386, 392 (1987); Gamewell Mfg., Inc. v. HVAC Supply, Inc., 715 F.2d 112, 115 (4th Cir. 1983). "In a federal court, such a motion – **at least when the underlying cause of action is federal in nature** – is determined in accordance with federal law. See Michaud v. Michaud, 932 F.2d 77, 80 n. 3 (1st Cir. 1991); Fennell v. TLB Kent Co., 865 F.2d 498, 501 (2d Cir. 1989); Mid-South Towing Co. v. Har-Win, Inc., 733 F.2d 386, 389 (5th Cir. 1984); Gamewell Mfg., Inc. v. HVAC Supply, Inc., 715 F.2d 112, 115-16 (4th Cir. 1983)." Malave, 170 F.3d at 220 (emphasis added).

However, since the present case deals with both federal and state causes of action, and since the purported settlement, strictly speaking, took place through communications outside the context of the proceedings before this Court, we will err on the side of caution and apply Puerto Rican contract law to this dispute. In any case, as will become apparent through our discussion, the law of contracts in Puerto Rico as to these issues is almost identical to the

5

traditional doctrines of the common law. The Court believes, therefore, that the result in this case would be identical no matter which of these two bodies of law were to be applied.

Under Puerto Rico law a contract comes into existence when: 1) the contracting parties consent; 2) there is a definite object which may be the subject of the contract; and 3) there is cause for the obligation. Article 1213 of the Puerto Rico Civil Code, 31 P.R. Laws Ann. § 3391. These are basically the same requirements established in the common law. In particular, the Civil Code defines the settlement contract as a special contract of compromise in Article 1709. 31 P.R. Laws Ann. § 4821. "A compromise is a contract by which each of the parties in interest, by giving, promising, or retaining something, avoids the provocation of a suit, or terminates one that has already been instituted." Id. Such a contract is established when the following requirements are met: 1) the parties consent; 2) the object of the contract is the controversy between the parties; and 3) the cause for the contract consists of the elimination of the controversy through reciprocal concessions. Neca Mortgage Corporation v. A&W Dev. S.E., RE-92-494 (P.R. 1995). Consent is manifested through the concurrence of an offer and an acceptance of the object and the cause which are to constitute the contract. Article 1214 of the Puerto Rico Civil Code, 31 P.R. Laws Ann. § 3401. The same is true of consent in a common law context.

A compromise can be either judicial or extra-judicial. In either case, the contract has the force of law between the parties. Article 1230 of the Puerto Rico Civil Code, 31 P.R. Laws Ann. § 3451. Once the existence of a compromise has been established, such a contract becomes *res judicata*. Article 1715 of the Puerto Rico Civil Code, 31 P.R. Laws Ann. § 4827. Nonetheless, the defenses of error and deceit are also available to the parties to a contract of compromise. Articles 1217, 1218 and 1716 of the Puerto Rico Civil Code, 31 P.R. Laws Ann. §§ 3404, 3405 and 4828.

In the case before us, Plaintiffs argue that a contract of compromise was reached between the parties through the series of letters described above. We find no recourse but

6.

to agree with them. The two successive letters from Banco Financiero and the Commonwealth offered to Plaintiffs, in so many words, the payment of a total of $11,000.00 in cash ($5,000.00 from the bank and $6,000.00 from the Commonwealth), along with the cancellation of Plaintiffs total debt to the bank, in consideration for the settlement of all claims in the above-captioned action. See **Docket # 93, Exhibits A** ("In addition to raising its initial counter-offer to extinguish the full amount of Plaintiffs' debt, our client considers a nuisance value of $5,000 to be adequate consideration.") and **Exhibit B** ("The Committee approved a settlement amount of $6,000. Assuming that Banco Financiero's settlement counteroffer is not withdrawn, the combined settlement offer of both sets of defendants in this case would be the approximate $223,000 debt cancellation and $11,000 in cash."). Such an offer was left on the table by Defendants, and Plaintiffs took the bait several days later. Through their letter Plaintiffs unequivocally accepted the offer. Id. at **Exhibit C** ("The plaintiffs have decided to accept the settlement offer made by the defendant."). Therefore, Plaintiffs have shown that the first requirement of a compromise was met, the parties' consent. With respect to the other two requirements, it is clear from the letters that the object of said contract was the termination of the lawsuit, and that the approximate $223,000 debt cancellation and $11,000 in cash were given in consideration of said termination of the suit. As such, the Court must conclude that a contract of compromise was indeed perfected by the parties.

   Defendant objects to such a characterization of the situation by arguing that Plaintiffs' acceptance of their offer was untimely. The parties cite no Puerto Rico Supreme Court case, and we have found none, which requires that an offer be accepted within a specific amount of time for a contract to be perfected. However, Albaladejo explains that one of the ways in which an offer may be extinguished is when the reasonable amount of time for acceptance has passed. Manuel Albaladejo and Silvia Diaz Alabart, <u>Comentarios al Código Civil y Compilaciones Forales</u>, Tomo XVII, Vol. 1-B, pages 96-97. Furthermore, he states that

determination of how long that reasonable time should be should be left to the courts on a case-by-case basis, and depends on the means used for the offer and acceptance, and the normal usage and customary practice in the particular business at issue. Id. at 87. The common law rule in this respect is pretty much identical: "It is hornbook law that an offeree's power of acceptance vanishes at the time specified in the offer, and if no deadline is prescribed, 'at the end of a reasonable time.'" Mathewson, 827 F.2d at 853 quoting Restatement (Second) of Contracts § 41(1) (1979); and citing Minneapolis & St. Louis Ry. v. Colombus Rolling Mill, 119 U.S. 149, 151 (1886). What is a reasonable time depends on all the circumstances of the case. Id.

In this case, Defendant Banco Financiero faxed a copy of the first letter, containing their part of the offer, on February 19, 2002 to Plaintiffs' counsel. Then, on February 22, 2002, Plaintiffs' counsel received *via* fax the second letter, from the Commonwealth, completing the offer to settle the whole case. After consulting with their clients, Plaintiffs' counsel faxed their letter to Defendants' counsel accepting the offer on March 14, 2002. In other words, a total of twenty (20) days passed between the receipt by Plaintiffs' counsel of the complete offer and the receipt by Defendants counsel of Plaintiffs' acceptance. There is no controversy as to these facts. This case has been pending before this Court for almost four (4) years now. Furthermore, no major developments took place in the case while the offer was on the table. Therefore, the relative positions of the parties in terms of risk and expenditures remained the same. Cf. Mathewson, 827 F.2d at 850 (holding that the issuance of a Supreme Court decision, which dramatically changed the legal landscape on which the parties stood, right before the offer was accepted, did not invalidate said acceptance and the resulting contract; the offeree had to retire the offer, and did not). The Court firmly believes that the twenty (20) days during which Defendants had to wait for a final determination which would bring this whole suit to a swift conclusion, was hardly an unreasonable amount of time. If Defendant wanted its offer to extinguish any earlier, it should have established

8

a specific period of time for acceptance. Since it did not, it cannot now expect the Court to salvage its carelessness.

In fact, the only authority that Defendant cites in support of its position that acceptance was untimely is Fed. R. Civ. P. 62. Defendant states that Rule 62 "specifies that when a defending party serves upon the adverse party an offer, the proscribed term within which plaintiff must accept the offer is ten (10) days." **Docket # 96 at 2**. The Court has reviewed Rule 62 and has found no such statement. In fact, Rule 62 deals with the issue of stays of proceedings to enforce a judgment. However, the Court will assume that Defendant in fact refers to Fed. R. Civ. P. 68, which deals with offers of judgment. Rule 68 states that "[a]t any time more than 10 days before the trial begins a party defending against a claim may serve upon the adverse party **an offer to allow judgment to be taken against the defending party** for the money or property or to the effect specified in the offer, **with costs then accrued**." Fed. R. Civ. P. 68 (emphasis added). The rule goes on to specify that such an offer must be accepted by the plaintiff within 10 days after service of the offer, or the offer shall be deemed withdrawn. Id. Defendant argues, then, that Rule 68 necessitates the conclusion that Plaintiffs' acceptance was untimely.

There are several problems with this argument. First, Rule 68 deals with offers of **judgment**. As such, not all settlement offers come under the purview of this rule. Wright, Miller and Marcus, Federal Practice and Procedure Civil 2d § 3002. See also, Marek v. Chesny, 473 U.S. 1, 6 (1985). The offer must not be "merely to settle the suit; it must be **to permit judgment to be entered** on specified terms." Id. Not only that, but the offer must also be "unconditional and **must include 'costs then accrued.'**" Wright, Miller and Marcus, supra, at 3002. In the case before us, the offer letters mention nothing about consenting to the entry of judgment. In fact, both offer letters make reference to the fact that Defendants are unwilling to concede the merit of Plaintiffs' claims. Furthermore, no consent to any award of costs against Defendants is present. In addition to this, Rule 68 also requires that

the offer be served on the adverse party in the manner provided by Rule 5(b). Id. Defendant has made no attempt to prove to this Court that it complied with the requirements of Rule 5(b) when serving this offer to Plaintiffs. In any case, the fact that this was not an offer of judgment is dispositive of this issue. Rule 68 is inapplicable to the case at bar.

Defendant also argues, in the alternative, that even if Plaintiffs' acceptance was timely, its consent was invalid since it was led to mistake by Plaintiffs. Defendant contends that Plaintiffs led it to think that the children's **federal** claims were still alive, and that it was in consideration for the dismissal of such claims that it was offering the additional $5,000 in cash. In fact, most of Defendant's letter withdrawing the offer, Plaintiffs' argument in their motion requesting enforcement, and Defendant's opposition, are concentrated on the issue of whether or not the children's federal claims were dismissed. To be honest, we do not understand what all the proverbial fuss is all about. In the first place, the parties should be concentrated on putting an end to this four-year old dispute *in toto*, without worrying so much about which particular claims, be they state or federal, are the ones still alive. But let us ignore the legalistic maneuvering for now.

The heart of the matter is that Defendant never really intended to offer the $5,000 in consideration for the dismissal of the children's federal claims. In fact, in its offer letter Defendant specifically spelled out that their offer was based on the fact that "[t]he Court ha[d] recommended to the parties a stipulation that takes into consideration the pending **state claims of the minor children** who witnessed the arrest." **Docket # 93, Exhibit A.** The offer letter itself made reference to the state claims, not the federal ones. How can Defendant possibly expect this Court to believe that they were misled by Plaintiffs regarding the federal claims?

In any case, if Defendant's counsel had not been aware of the status of the litigation and of which causes of action were or were not pending, that lack of awareness falls squarely within the category of things which are Defendant's problem. We are dealing with a

sophisticated Defendant with competent attorneys. However, the Court cannot help but feel that this whole situation has only been caused by Defendant's contumacy and unwillingness to cooperate with a swift and amicable resolution of this dispute. Since the Court is convinced, thanks to Defendant's own statements in its offer letter, that Defendant was not misled by Plaintiffs and was in fact aware that children's state claims were the ones at issue, Defendant's second argument also fails.

### Conclusion

For the reasons discussed above, Plaintiffs' motion to enforce the settlement agreement (**Docket # 93**) is **GRANTED**. Judgment dismissing the above-captioned case without prejudice, and incorporating the above-described settlement agreement reached by the parties, shall be entered accordingly.

**SO ORDERED.**

In San Juan, Puerto Rico, this 21 day of June, 2002.

SALVADOR E. CASELLAS
United States District Judge